■    QUEENS FARMS DAIRY, INC., Respondent, v CONSOLIDATED EDISON COMPANY OF NEW YORK, INC., Appellant.—In an action, *inter alia,* to recover for damages to property, defendant appeals from (1) a judgment of the Supreme Court, Queens County, entered May 23, 1977, which, upon its default, is in favor of plaintiff, and (2) an order of the same court, dated July 25, 1977, which denied its motion, *inter alia,* to vacate (a) the aforesaid judgment and (b) an order of the same court, dated February 23, 1977, which, *inter alia,* struck its answer. (Defendant's appeal from a further order of the same court, dated October 13, 1977, which denied its motion to

reargue, was dismissed by order of this court dated November 28, 1977.) Appeal from the judgment dismissed, without costs or disbursements. No appeal lies from a judgment taken on default. Order reversed, without costs or disbursements, and defendant's motion granted, with the judgment to stand as security, on condition that (1) defendant produce a witness with knowledge of the facts and all appropriate information at an examination before trial and (2) defendant's attorneys pay plaintiff's attorney the sum of $2,500 five days before the date of the examination; in the event that such conditions are not complied with, then order affirmed and plaintiff is awarded one bill of $50 costs and disbursements to cover the appeals. The examination shall proceed at a time and place to be fixed in a written notice of not less than 10 days, to be given by plaintiff, or at such time and place as the parties may agree. The time within which plaintiff may serve the notice is extended until 30 days after entry of the order to be made hereon. This appeal arises out of the denial of defendant's motion to vacate a default judgment, which was entered pursuant to an order striking defendant's answer and directing an inquest for the assessment of damages. The action herein was brought to recover property damages caused by a blackout in July, 1972. The amended complaint alleges that defendant was negligent and grossly negligent in (a) failing to maintain and operate its plants and equipment in a proper manner and condition, (b) making continuous and repeated representations that power would be restored within an interval of not more than two hours and (c) interrupting electrical service without prior notice or warning to the plaintiff that it was imminent or likely to occur. A general denial was entered by the defendant. In a separate defense, defendant alleged that its rate schedule exculpated it from "ordinary negligence". On March 15, 1974, pursuant to notice, plaintiff commenced discovery proceedings by taking the oral deposition of one of defendant's employees. At the conclusion of the examination, plaintiff's counsel specifically reserved his right to conduct further discovery upon review of the completed transcript. After reviewing the completed transcript, plaintiff's attorney attempted to contact the attorney for defendant who had appeared at the examination before trial in order to continue the examination. The efforts to communicate with defendant's attorney were made by telephone and by mail. After the passage of several months without any response, plaintiff moved, at the end of January, 1975, *inter alia,* for an order directing defendant to appear for a continued examination with respect to four specific areas: "1. The cause of the power failure. 2. The maintenance of the cables involved in the delivery of power to the plaintiff, and other equipment necessary for the supplying of power to the plaintiff. 3. The furnishing of information by defendant to the general public, including plaintiff, with regard to (a) the cause of the power failure, (b) the necessity for defendant voluntarily shutting power service, (c) the fact that such voluntary shutdown would occur, or (d) any other information emanating from defendant to the general public, pertaining to plaintiff's claim. 4. The decision to voluntarily cut off power service." Defendant defaulted on that motion and thereafter an order was signed requiring it to appear for a continued deposition as to those four areas on March 14, 1975. The day before the scheduled deposition, the managing clerk of the firm representing defendant requested an adjournment, which request was refused. The attorney in charge of the case made a similar request, but this too was refused, at which point the latter became discourteous and allegedly stated: "I'm on trial, this is my case and if that's the way you want to play it I'm not sending anybody down there * * * I might send somebody down but he won't know anything

about the case." Defendant's counsel did not produce a witness on March 14, 1975, but did advise plaintiff's counsel that it would produce a witness by March 19, 1975. Defendant did produce a witness on that date who testified with respect to defendant's activities in ascertaining the location of specific power failures and defendant's record-keeping procedures. That witness produced records concerning the feeder lines involved in supplying power to areas which included plaintiff's location. In order to save time, the witness and his counsel agreed to supply information regarding the feeder lines. In addition, defendant's counsel agreed to supply the answer to the following question: "On behalf of defendant who made the determination to shut down the network after the first seven feeder lines involuntarily cut out." On April 14, 1975 defendant produced a third witness who testified with respect to the furnishing of information by defendant to the public, including plaintiff, with regard to the cause and background of the power failure. The transcripts of those witnesses were executed and returned. However, the information which was supposed to be supplied was never forthcoming. Requests by plaintiff's counsel to defendant's counsel for this information from August, 1975 through 1976 went unheeded. Plaintiff then moved for an order, pursuant to CPLR 3126, striking defendant's answer and for the entry of judgment on the ground that defendant and its attorneys had willfully, continuously and contemptuously disregarded the prior order of the court. Defendant secured an adjournment of the motion and, upon the return date, its counsel argued, without being specific, that the trial counsel was actually engaged. Defendant's counsel stated to the court: "I would ask the Court—I see it calls for the production of a witness. If that witness is available, I would ask this Court to set a date to produce that witness." The Special Term first suggested that an order for further discovery be submitted, but upon plaintiff's insistence, it reviewed the motion papers, granted plaintiff's motion and directed that an inquest be had. Thereafter, defendant's counsel moved to vacate the order striking the answer. The motion to vacate was denied because of the absence of any adequate explanation why the plaintiff's motion pursuant to CPLR 3126 could not have been defended by defendant's counsel. In our view, the Special Term abused its discretion in striking defendant's answer. CPLR 3126, under which plaintiff moved to strike defendant's answer, clearly requires a willful refusal on the part of the adverse party to disclose information before such a drastic remedy will be ordered by the courts. Indeed, as noted in the practice commentary to CPLR 3126 (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR 3126:7, p 647): "The courts are not enthusiastic about imposing sanctions under CPLR 3126 * * * The courts are almost uniformly prone to accept the resisting party's excuses, at least to the extent of giving him one final chance to disclose (as by a conditional order under CPLR 3126)." There is no question that the conduct of defendant's counsel in the case at bar was inexcusable. Nevertheless, we note that defendant did produce three witnesses and agreed to produce a fourth witness and certain necessary information. Under these circumstances, defendant's conduct cannot be termed so willful as to justify the harsh penalty imposed by Special Term. In *Cinelli v Radcliffe* (35 AD2d 829), an order had been entered which (1) granted plaintiff's motion to strike defendant's answer for failure to submit to an examination before trial and (2) ordered an inquest. This court reversed the order and granted plaintiff's motion "only to the extent of precluding defendant from testifying at the trial unless he (1) submits to an examination before trial on such date and place as shall be fixed by plaintiffs by written notice of not less than 10 days served upon

defendant's attorney and (2) pays $250 to plaintiffs' attorney five days before such date for examination." The court went on to state: "In our opinion, the striking of an answer is an extreme and drastic penalty which should not be invoked where, as at bar, the moving affidavit fails to show conclusively that the default in appearing on examination before trial was clearly deliberate or contumacious * * * The existence of a prior order directing submission to such examination, absent facts equating a willful default, does not require the striking of defendant's answer * * * Where the conduct of defaulting parties does not amount to a willful disregard of such a prior order, they should be given 'one more additional chance to redeem themselves and have their day in court' (Soffair v. Koffler, 29 A D 2d 659, 660)." Moreover, the record indicates that defendant has a meritorious defense and plaintiff has failed to produce any evidence of prejudice. Indeed, it should be noted that the motion to strike defendant's answer was not made until more than 20 months after the last examination before trial, which was conducted on April 14, 1975. Under all of the circumstances herein, it is our view that it is more appropriate in the case at bar to invoke the holding of Moran v Rynar (39 AD2d 718, 719) and "save the action for the client, while imposing upon the attorney, personally, a penalty for his neglect". The drastic relief granted by the Special Term would only serve to sanction the unfair punishment of a client for the oversights of its attorney, a result which should be avoided if at all possible. Martuscello, J. P., Titone, Suozzi and Cohalan, JJ., concur.